LAW SCHOOL LIBRARY.

## AMOS DOUGLASS v. ALONZO WHITTEMORE.

### Construction of deeds.    Water privilege.

H. conveyed to W., the defendant, five acres of land, on which was situated a grist mill supplied with water by means of a dam and flume also situated upon the premises conveyed. Above this dam was a stump standing in the water, being the same referred to in the conveyance to the defendant and also in the deed to the plaintiff hereafter mentioned. By the above conveyance was granted to the defendant "the right to control the water for the purpose of a grist mill to the top of a certain stump of a tree standing in the water above the dam, and the said W. is to keep the present dam in good repair at its present original height, reserving to myself (the grantor) and heirs the right of drawing water from the dam or flume, not to interfere with the grist mill privileges in any shape or way, for any purpose I may think proper until the water is drawn down to the top of a stump formerly called low water mark." Subsequently H. conveyed to D., the plaintiff, an acre of ground on which was situate a saw mill, depending for water on the same source as the grist mill above mentioned, located below the grist mill and further from the dam and flume, "together with the right of drawing water for the use of said saw mill or other machinery attached thereto from the dam or flume, until the water may be or shall settle to the level of the top of a certain stump formerly called low water mark, said water to be drawn and used for said saw mill and any other purpose not inconsistent with water privileges

heretofore granted." For the purpose of exercising the right of drawing water for the use of his saw mill, as granted in his deed, the plaintiff inserted a water gate in the side of the flume, the bottom of which was twenty-one inches below the level of the top of the stump, called low water mark, and five feet above the bottom of the flume. The defendant, denying the plaintiff's right to insert a gate in the flume lower than the level of the top of the stump, shut off the water from the flume by a head gate whenever the plaintiff attempted to draw water through the gate inserted by him in the flume, although the water in the pond was all the time above the level of the top of the stump;

*Held,* that whether the use of the gate, as it was inserted by the plaintiff would interfere with "the grist mill privileges" when reasonably exercised, was a question of fact to be determined by a jury, under proper instructions, in a case before them on that point.

*Held,* also, that unless it would so interfere, it was a violation of the plaintiff's rights for the defendant to shut off the water from the flume, while it was above the low water mark; and

*Held,* also, that if it would thus interfere, *quere,* whether the defendant would have the right to resort to such a method of preventing it.

CASE for obstructing and disturbing the plaintiff in the use and enjoyment of a water privilege for his saw mill. Plea the general issue and trial by jury at the March Term, 1859, of the Rutland county court,—PIERPOINT, J., presiding.

The testimony on the part of the plaintiff tended to show that a certain grist mill and a certain saw mill, situated in the village of Hortonville and town of Hubbardton, were each worked by water supplied by means of a stone dam across the outlet of a pond about two miles long and of an average width of three-fourths of a mile, called Horton Pond ; that the dam was above and near the grist mill, and the saw mill was on the outlet about thirty rods below the dam ; that a flume extended from the dam into a bulk head connected with the grist mill, the flume being sixty-nine feet in length, including the bulk head therein which was thirty feet long; that there was an old dam formerly built across the outlet about seven rods above the stone dam, and a certain stump standing in the water above and near the old dam, the top of which stump was formerly called low water mark. That the saw mill and grist mill had both been owned and occupied by Gideon Horton, and, after his decease, by his son, Rollin V. R. Horton, for a period altogether of more than thirty years, and until the conveyance of the saw mill to the

plaintiff, and of the grist mill to the defendant, as hereafter mentioned.

The plaintiff then showed that he owned and occupied the saw mill and its appurtenances under a deed from Rollin V. R. Horton and wife, dated September 20th, 1856, which conveyed to him about one acre of land, upon which the saw mill was situated, together with a certain right of drawing water from the stone dam or flume above mentioned, for the use of the saw mill, until the water in the pond should settle to the level of the top of a a certain stump, called low water mark, subject to water privileges theretofore granted.   The terms in which this right was granted are recited in the opinion of the court.

The plaintiff's evidence further tended to show that in the latter part of the month of June, 1857, he applied to the defendant to select a place in the flume where he would prefer to have a water gate put for the purpose of drawing water therefrom for the use of the plaintiff's saw mill, there being then no such gate in the flume ; that the defendant declined to indicate any preference, and the plaintiff thereupon put a water gate into the flume, fifteen feet below the stone dam, which gate was five feet above the bottom of the flume and twenty-one inches below the level of the top of the stump called low water mark; that the defendant objected to the use of the gate, and on the 10th day of July, 1857, and at various other times between that day and the time of the commencement of this suit, whenever the plaintiff raised his gate, shut down and closed the head gate of the flume, which was above the plaintiff's gate, for the purpose of preventing, and thereby did prevent, the plaintiff from drawing any water from the pond, through his gate, tor the use of his saw mill; and that from the time when the plaintiff put in his gate until the commencement of this suit, the water in the pond was always on a level at least eighteen inches higher than the top of the stump called low water mark, and that during all that time the plaintiff was deprived of the use of his saw mill, from want of the water necessary for working it.

The defendant introduced in evidence a deed from Rollin V. R. Horton and wife to himself, dated November 5th, 1855, conveying about five acres of land, upon which the grist mill, stone dam

and flume were situated, and containing a reservaion of a certain water privilege for the saw mill. The material portions of this deed are recited in the opinion. It was conceded that the top of the flume was about two feet higher than the level of the top of the stump, and that the stone dam was higher than the top of the flume. The identity of the stump, of which evidence was introduced, with that mentioned in the deed to the plaintiff, and with that twice referred to in the defendant's deed, was also conceded.

The court ruled, *pro forma*, that, in view of the respective conveyances above mentioned, the plaintiff, for the purpose of drawing water for the use of said saw mill, had no right to put a water gate into the defendant's flume with a bottom lower than the level of the top of the stump called low water mark; and that if the bottom of the water gate which the plaintiff put into said flume was lower than such level, the plaintiff had no right, without the consent of the defendant, to make any use of said gate for the purpose of drawing water for the use of his saw mill, although the water in said pond might be higher than said level; and that the defendant had a right to close and shut down the head gate of said flume, and to keep said head gate closed and shut down, if it was necessary to prevent the plaintiff's using his said gate; and directed a verdict for the defendant, to which the plaintiff excepted.

*Linsley & Prout*, for the plaintiff.

*Briggs & Nicholson*, for the defendant.

BARRETT, J. The decision of the case depends upon the construction to be given to the deeds, by virtue of which the parties hold their respective rights and interests in the water privilege, and the use of the water in question. They both hold under deeds from R. V. R. Horton, who conveyed to the defendant, November 5th, 1855, about five acres of land, on which the grist mill, stone dam and flume were situated, " with the right to control the water for the purposes of a grist mill to the top of a certain stump of a tree standing in the water near the old flume and in or near the dam of said old flume and the said Alonzo (the defendant) is to keep the present dam in good repair at its

present or original height; reserving to myself and heirs the right of drawing water from the stone dam or flume not to interfere with the grist mill privileges in any shape or way for any purpose I may think proper until the water is drawn down to the top of a stump formerly called low water mark."

Said Horton, September 20th, 1856, conveyed to the plaintiff the saw mill premises, depending for water on the same source as said grist mill, situated below said grist mill, and further from said dam and flume, " together with the right of drawing water for the use of said saw mill or other machinery attached thereto from the stone dam or flume at the outlet of the pond above the grist mill until the water may be or shall settle to the level of the top of a certain stump standing in the water near the old flume formerly called low water mark, said water to be drawn and used for said saw mill and any other purpose not inconsistent with water privileges heretofore granted," etc.

It is obvious that Horton conveyed to the plaintiff the rights and privileges which he had reserved to himself in his deed to the defendant. The plaintiff concedes that he stands solely on the rights thus reserved.

For the purpose of exercising and enjoying, in the service of his saw mill, the right of drawing the water "until it is drawn down to said low water mark," he inserted a gate in the side of the flume, the bottom of which is twenty-one inches below said low water mark, but is five feet above the bottom of the flume. Through this gate he attempted to draw water for the use of his saw mill.

The defendant, denying the plaintiff's right to insert a gate below the level of said low water mark, shut off, by a head gate, the water from the flume whenever the plaintiff undertook to draw water through the gate thus inserted into the flume by him.

The defendant claims that he has the exclusive right to all the water, as a mass, that lies below the level of said low water mark, and that the plaintiff has the right to use only from the upper stratum, limited downward by said low water mark ; and, therefore, that when the plaintiff, through his gate, draws water that lies below said low water mark, he takes specific water that the defendant has the exclusive right to.

45

Douglass *v.* Whittemore.

On the other hand, the plaintiff claims that he has the right to take water from the dam or flume in any way to serve his purposes, till the water shall have settled to said low water mark, provided he does it in a way " not to interfere. with the grist mill privileges ;" that the defendant's right is not to be gauged from the bottom upwards to low water mark, and that it becomes an exclusive right to any particular water only when the water in the pond shall have settled to said low water mark.

It can hardly be doubted that while the deed to the defendant was designed to convey to him an unimpeded grist mill privilege, and to that end an exclusive right to the water after it should have settled to low water mark, the reservation in the same instrument was designed to secure to the grantor the free use of the water when above the said mark, subject only to the provision that such use should " not interfere with the grist mill privileges." We deem the language of the deed to the defendant, both in the granting part and in the reservation, in its ordinary sense and force, to be quite explicit to this effect. To give it a different meaning would seem to require a forced construction in contravention of settled rules.

If the language rendered doubtful the force and effect to be given to the conveyance and the reservation, it would obviously be the duty of the court to make such a construction as would at the same time secure to the defendant the full beneficial use of the grant to him, and render the reservation as beneficial to the party making it as it could be. In our opinion the construction claimed by the defendant would tend greatly to impair the usefulness of the reservation, while it is not evident nor does it seem probable that such a construction is necessary in order to ensure to him the full beneficial use of his grist mill privileges. Whether so or not cannot be determined as matter of law upon any known principles of hydrostatics or hydraulics. Whether the gate as it was inserted by the plaintiff would interfere with the use of the *grist mill privileges* must therefore rest as a question of fact, to be determined by a jury, under proper instructions, in a case properly before them on that point. Unless it would so, then upon the construction we now give to the deeds in question, it would be a violation of the plaintiff's rights for the defendant to shut

off the water from the flume, while it was above low water mark. And even if it would thus interfere, it may be questionable whether the defendant would be warranted in resorting to such a mode of preventing it.

The views thus expressed imply what in our opinion should be the effect of the terms of the grant and reservation in the deed to the defendant, viz: that the *grist mill privileges* have precedence of those of the saw mill, when necessary for their reasonable enjoyment, in respect to the use of the water when it is above low water mark ; but that the defendant would be bound to exer‑ cise his right in that respect in a manner not needlessly to inter‑ fere with or impede the beneficial enjoyment of the water by the plaintiff for the use of his saw mill. Down to the point of inter‑ fering with " the privileges of the grist mill " when reasonably exercised, we think the plaintiff has the right to the free use of the water in common with the defendant, for all the purposes falling within the scope of said reservation, when it is above said low water mark.

The result is that the judgment of the county court is reversed, and the case remanded,